articulated a standard that is not consistent with the Supreme Court or the Eighth Circuit law. The District Court here correctly cited to the MetLife v. Glenn case and then also to the Chronister case, which of course was issued slightly after the Glenn case was decided and discussed the conflict of interest issue. What Glenn holds though is that a conflict of interest, an implied conflict of interest on which no proof is required to establish as a starting point, that a conflict is one factor. The two concepts here that are important and ones that are set forth in many cases I'll allude to in a moment are that the District Courts are to apply a set of factors, not simply look at conflict of interest. In fact, I believe that that reading both the MetLife decision and the Court's order, both of them cited that conflicts are but one factor among many. So the conflict of interest issue when adjudicated becomes a factor. The concept here that the court in the Glenn case articulated was that in looking at the Court of Appeals opinion in that case, is that there were other factors present that the Court of Appeals looked at. Those were described as procedural unreasonableness. That sounds a whole lot like procedural irregularity. In fact, that's exactly what the Supreme Court opined, that it was not going to require District Courts to come up with all sorts of burden shifting and procedural rules that the decision on whether the administrator abused his discretion would be based upon conflict of interest as one factor and then a combination of other factors. Now moving directly from the Chronister case, which was decided in 2009, that case cited to an opinion that Judge Woolman wrote, Wakanen. The Wakanen case was issued not too long after the MetLife case. In that case and in several other cases, this court correctly articulated the Glenn holding. I'll just read from it very quickly here. We are instructed by Glenn to give importance to this conflict of interest depending how closely the other factors are balanced. That articulation of the standard necessarily means, as applied to this case, that whatever the procedural issues are, if to the extent that the administrator is alleged to have favored one examiner versus a treating physician or the timing of the decision was not correct, that those are factors that can be taken into account. And on that point, I would note that that's exactly the on the Glenn case that the Glenn's decision utilized as an example. And one more case that articulates the conflict being one of several factors, this is a case that was issued in 2010, the Atkins case, also noted. Conflict is one of several factors. I won't spend the time going through all of the court decisions, but I have six or seven of them from the Court of Appeals articulating simply that, that the court is to look at, the district court is to look at a combination of factors. It would be the Hackett case, the Jones case from 2008, the Green case, which is cited in our brief, although for a different point, and the Gorbik case. The other quick point here is that I did a quick search of the circuits and found six of them without much difficulty, all applying or analyzing the issue of what a procedural unreasonable factor might be. What issues can affect the overall assessment of the district court's opinion? And one of them, a case called Hagen versus Aetna from the Fifth Circuit, looked at the delay. So without spending much more... How about the Seventh Circuit decision in Fessenden? I have that decision on the desk here, Your Honor. I believe that that decision looked at simply just another issue. The issue there was, excuse me, was whether the expiration of the timing of a decision would somehow change the standard of review because there was no decision to review. I believe that those are two separate issues. So with all due respect, and to try to capsulize this, I believe what has happened is that there perhaps was some uncertainty, and there are several cases in the Eighth Circuit, and they're cited in the briefs, that talk about the procedural irregularity prong of Wu. But again, going back to the beginning, going back to the Glenn case, it appears very clear that the Supreme Court's primary holding was that there is only one for purposes of a decision that is adjudicated under the abuse of discretion standard. Let me ask you that. Do you think Wu authorized de novo review? As I read it, it actually seems to apply a so-called modified abuse of discretion standard. That is correct, Your Honor. The way in which the Wu case has been described over time is a sliding scale. I actually took a look at that as well, just to see if there was anything out there, and there was one case, one circuit court case that identified them. There's a compendium out there that talked about different ways in which courts had analyzed this issue of the standard of review before Glenn. And it's fair to say that the Wu case, and I believe a case out of the Ninth Circuit, Abadi, I believe, is the Ninth Circuit case that said, even before Glenn was decided, we are going to abolish the sliding scale case. So I realize I'm sort of backing into this because it's taking what the judge cited to and then looking at the actual holding, but that is correct. Wu was a sliding scale case, allowing the judge to look at both issues and decide whether there should be a change in the standard of review. The Supreme Court said there was one standard of review. That's the way the law of trust works. And if the courts want to look at other factors or a combination of factors, they can do so, but the standard itself does not change. I'm not going to discuss the Nichols case, your honors, or the issue of the conflict of interest because I believe that's already been discussed in the briefs. What I would like to do, I'm happy to at least, or pleased to at least talk about the procedure of regularity issue in the alternative. And I'll just spend a quick moment on that. As indicated in my prior remarks, I don't believe that that applies. Both the Seaman and the McGarrett cases were decided before Glenn. So as a threshold matter, reliance upon those cases would not, in my view, be appropriate. The other issue there is that under the McGarrett case, which Judge Wolman authored, there was no decision made. And in that case, even though there was no decision made, what this court held was that because there was no prejudice to the claimant, then there was no change in the standard of review. And as indicated in our briefs, there was no prejudice to Ms. McIntyre by the delay. It's unfortunate. It's regrettable. We can talk a long time about why the delays were caused and what happened. But ultimately, the reliance standard, my client's objective was to obtain an IME. It had to go through three different doctors and multiple delays and locations and all sorts of other scheduling issues to obtain that. But in the end, Ms. McIntyre did receive a full and fair review and the decision was made. Let me then pivot to or switch and talk about the district court's consideration of the record. I'm going to obviously base that upon the abuse of discretion standard, but the assessment of the record on the facts is not really standard of review dependent. With all due respect to Judge Thunheim, his assessment of the record simply did not consider the entire record. He identified three or four items that favored Ms. McIntyre's claim and did not, for instance, did not consider any of the evidence that reliance standard relied upon in its initial denial of February 5, 2016. And several of those, which I'll talk about in a moment, stood undisputed. They were obviously reviewed upon appeal and not disputed. In terms of the evidence that reliance standard did rely upon, there are three categories. One is review by experts. So in this case, there were two physicians who examined and opined on Ms. McIntyre's condition. That's Dr. Tseng, a neurologist at the Mayo Clinic, and Dr. Bishara, who conducted an IME, as you are aware. The district court relied very heavily on Dr. Tseng's of March of 2016. The difficulty with the letter is that it is devoid. It lacks a reference, underlying reference or citation to any testing, any examination by her, or consistency in her prior records. She saw Ms. McIntyre three times between 2014 and 2015 and utilized the following phrases, that she had plateaued, her fatigue had plateaued, she was doing well, she was stable, and she was active. The letter that she wrote on March 16 said she has uncontrollable pain, she cannot work, she can't do anything that requires, that looks like work, and she has a lack of concentration. So again, I'm not suggesting that a treating physician's letter is not some sort of evidence, or it's not some sort of objective evidence. What I'm saying is that it's really not consistent with the record. By the same token, when Reliance Standard decided that it needed an IME, it went to a neurologist. It didn't ask a general internal medicine doctor or an occupational doctor to review her, to assess her, and he did. He examined her. He concurred largely with Dr. Singh's evaluation of her condition, that she had muscle wasting and weakness in her lower extremities. Obviously, she had some issues that went back to birth, and that her subjective symptoms were consistent with the treatment. But that's a different matter from determining whether she could perform a job that did not require her to be on her feet and do a lot of walking, such as the job she had before as a registered nurse. The issue that posed to him was, does she have the physical capacity and cognitive capacity to work at a job in the healthcare area? Now, he didn't know that that was the residual employability analysis, but could she work in a field that she was qualified to work in, in spite of the fact that had limitations and she needed to take breaks. This court has... You're well into your rebuttal time. Would you like to reserve some? Yes, I would. I'd like to reserve two minutes, please. And you can continue if you want. No, I'd like to reserve the two minutes then. Thank you. Very well. Ms. McKinnon. Good morning. May it please the court, counsel. If plan insurers are fiduciaries endowed with decisions, then shouldn't they act like fiduciaries? And if they do not, then why should a court apply deferential review? That's the question for this court. Where an insurer ignores the timing regulations for making an appeal determination, de novo review is required. Whether this court gets to that result by following its precedent from the procedural irregularity prong of the Wu decision, or this court aligns with the outcome from most other circuits, the result should be the same. The district court properly applied de novo review when Reliance Standard here delayed deciding Ms. McIntyre's appeal because of its own and its vendor's missteps for more than twice the allowable time. We are asking this court to determine that a failure to follow the timing regulations, and by the way, it wasn't just the regulation at stake. It also was the plan. The plan embedded or the policy embedded the regulations and required a timely decision. The regulations require that their decision be released within 45 days of the appeal. And if there needs to be additional time because of unusual special or unusual circumstances, then within that first 45 days, the insurer is supposed to let the employee or claimant know that additional time is needed. And then there's an additional 45 days, so a maximum of 90 days. The regulation also carefully balances things by acknowledging that if information that the insurer needs is in is from the claimant for the claimant to provide, then that time needed to get that additional information is told. So we're only counting against the insurer the time it needs to do its job. You heard my question earlier about Wu. Correct me if I'm wrong, but I don't read Wu as authorizing de novo review, but more of a modified abuse of discretion. No, Wu set a sliding scale. That's correct. The automatic... How can the district court, in light of that and Glenn, how can the district court go to de novo review? Well, in fact, in Seaman, that's what this court did. It went to de novo review. It said de novo should have been applied because the egregious failure on the part of the insurance company. And in fact, in Buckstrom, I believe also there is a language that says de novo should be reduced, perhaps to the extent of no deference, where there are significant procedural irregularities. The other reason that the de novo... So under the Wu procedural irregularity, this court's prudence. Deference could be slid down kind of like the dial on an old-fashioned TV as far as it needed to go to be appropriate to the degree of the egregiousness of the mistakes. This court in Seaman said it could even go as far as de novo review. Now, how about the McGarrett where there was no decision at all, not much less a late one, and we still said abuse of discretion apply? The court in McGarrett did say that, but the court also said we don't see any problem here with how the claim has been handled and we can make a determination because there's a sufficient record. The claimant did get his or her evidence before his evidence. McGarrett, the claimant actually submitted next to nothing on appeal and the overwhelming at the initial stage, which makes that case different from this case. In this case, McIntyre submitted an amply supported appeal and the insurance company dithered. Now, I think it's also important to talk about McGarrett didn't really focus on the regulation and neither, frankly, did Seaman. I think there was a reference to the regulation, but the regulation is important. If we take no notice of those regulations, they are toothless. Remember, the law is quite clear that a violation of the claims regulations does not give benefits, does not result in a benefit award. All that happens if the claims regulations are violated is that they're violated. The only possible consequence is a reduction in the standard of review. Now, it's been suggested in my opponent's argument that, well, there was no she wasn't harmed. There was no harm here. It just took longer and gosh, she got her full and fair review. I beg to differ, seriously differ. There was serious harm here. My client was living on the money that she was receiving from long-term disability and social security. She's gone without that long-term disability since they cut her off. This isn't a little thing that it takes a while to get a decision made. This is paying the mortgage, getting groceries on the table, fixing your car. It's significant. Now, it's also suggested, well, they were trying really hard to do the right thing. They wanted to get an IME so that they could get an expert to do the right thing. Well, that's all wonderful, actually. It's what they should do, but they should have done it sooner. When they didn't have their ducks in a row, and they couldn't get their ducks in a row, what this insurer as a fiduciary could have and probably should have done is simply put her back on claim, pay the benefits, and then start to work up their denial again. This notion that you can cut someone off of their, well, in her case, she does also have social security, but their source of income, and let them just wait endlessly for a decision is outrageous. And it's particularly outrageous when their claims regulations are very, very clear. You have to comply with the claims regulations. It's also in the plan. You need to comply with your plan. Now, what am I asking for here? I'm only asking that the court not be required to defer to this fiduciary that couldn't do its job in the time allotted. I'm not asking that we win the case. I'm just saying we should jettison this notion that we give deference and a great deal of weight, and we really take notice of a decision where there's a fiduciary making discretionary call when the fiduciary doesn't act like a fiduciary. There's no excuse for what happened here. And I want to pivot, Judge Grunder, to your point from the earlier argument, Fessenden. The Seventh Circuit had a arguably tougher case, right? In Fessenden, the claimant waited the 90 days, and then shortly after 90 days, somewhere 95, somewhere in there, brought a lawsuit. And within a few days, the insurance company, which actually, ironically, is the same insurance company as in this case, delivered its appeal decision. The Seventh Circuit didn't have a hard time saying a deadline is a deadline. You don't have to do a lot, but you have to make a decision. That is the fundamental reason for the existence of Reliance Standards Appeals Committee, to make a decision and to make sure that benefits are paid to the participant who's entitled to benefits. And if you cannot do it within the timeframe that the regulations and the plan require, why on earth are we giving you all this deference? The Seventh Circuit also said, what's so hard about this? This is a deadline. Let's not make this complicated. A deadline is a deadline. You need to make your decision within the timeframe. And when you don't, even if you're close, which in Fessenden, they had the argument, well, you know, substantial, it's really pretty close, it's really... Court said, no, it's a deadline. Get your decision done. That's what you're supposed to do. And so what we're saying here is this kind of serious procedural irregularity, a complete flouting, flouting of the regulatory requirements for a timely decision, ought not to be sanctioned. And the district court understood that and did that. Now, in the context of how the court got there, the district court got there, the district court followed the Wu procedural irregularity prong. The district court did not follow the Fessenden line of authority or the La Asmer Tenth Circuit line of authority. It simply said, we can get there with the Wu procedural irregularity prong. I want to just briefly address my opponent's comments on Glenn and how Glenn and the conflict of interest somehow control this case. I want to be very clear. The district court did make a mistake in writing that the conflict of interest that Reliance Standard has should shift the standard of review. That was incorrect under Glenn. I also want to be clear that it's not too surprising that the district court got muddled on this because Glenn says where conflict of interest is the issue. Conflict of interest will apply as a factor in an abuse of discretion analysis. That's what the parties argued in their briefs. Conflict of interest is something we look at if we if we've gone to abuse of discretion, and that was what was argued, and so that was what was before the court. Glenn does not address procedural irregularity, and I strongly urge the court not to fall into some sort of a trap that says Glenn went wide and said nothing changes the standard of review from abuse of discretion because really Glenn was about conflict of interest. The procedural irregularity of the magnitude here ought to be treated differently. Why? Because let's go back to where deference comes from. Where does it come from? The United States Supreme Court in Firestone v. Brooke said the default standard of review when a court is reviewing a plan fiduciary's actions is de novo. That's what that's what it's supposed to be in the absence of discretionary language in the plan. After Firestone, everybody wrote their plans to include discretionary language. It's as if the sponsors went out endowing all plan administrators with this enormous brilliant fiduciary status by saying you have discretion to make this decision. Now it's it's important to realize that this notion that we're giving them all this great weight and authority and a court defers to them is because they really know what they're doing is really just based upon a couple of words in the plan. Plan says you've got discretion. Bingo! Now all of a sudden the court loses all authority over the case and not all but much of the authority to decide the case. And that's just wrong. We'd like the court to hold that in the context of a blown deadline on an administrative appeal, de novo review should apply. It's a simple rule. It's what the court in the Seventh Circuit found. It's what a number of these others of this court's sister circuits have found. It's not hard and it's not an insuperable obstacle. All it says is that when we're in court we get to apply de novo review. It doesn't it doesn't mean we win. And it's not. Is it open for our court for this panel to adopt the Seventh Circuit rule in the face of our earlier opinions? In other words, what about, I think it was in Judge Baez, one of his opinions is footnote four did back to Glenn did it in effect overrule our Well, actually, there's been six cases since Glenn that this court has specifically said it abrogated Wu on conflict of interest. No court has, I don't believe, no member of this court has said that the procedural irregularity prong of Wu was overruled. You also asked Judge Woolman, well, are we the Eighth Circuit entitled to follow the Seventh Circuit? Of course, this is federal law. And if the development of the law shows a trend that the majority of courts are following and that makes sense and that really applies the regulation that's at stake here, it makes sense to apply de novo review and to adopt the ruling that the Seventh Circuit did. And bear in mind, it can cut both ways, right? I mean, the Seventh Circuit relied upon its earlier decision in Edward, where the court had said if a claimant is late getting her appeal up to the plan administrator, the plan administrator can put its hands back and say, I'm not going to look at your case too bad. You blew it. Well, if we're good at, you know, if we're going to apply deadlines, goodness gracious, we should apply deadlines to the plan administrator, the party that has the authority and the power and the expertise to make a decision that's of courts with full and fair review. I see I have 55 seconds left. And in that 55 seconds, I want to say that I think the district court's ruling on the facts is overwhelmingly supported by the evidence. Whether this court were to apply abuse of discretion or de novo, the evidence here was profound and compelling that Ms. McIntyre remained disabled and would not have been able to return to any occupation and the contrary determination by the plan administrator is utterly unsupported. If there are no further questions, I yield the rest of my time. Thank you. Hearing none, thank you, Ms. McKinnon. Mr. Hitler, I think you have a couple minutes for rebuttal. Yes, thank you very much, your honor. So let me cite to a couple of cases here in response to Ms. McKinnon's question about whether this court has acknowledged or that somehow the Glenn opinion has not been articulated and followed here. I'm looking at a district court case that was upheld by the a circuit I believe called Zesky district court decision 261 FSEP 3928 2017. There the district court specifically said holding that under Glenn that where the evidence shows procedural unreasonabilities, then the court may adjust the standard of review. That case was upheld by the circuit, although it not specifically cited. I would also like to point out that in a Judge Grinder author or was a member of the panel on the Manning case that Glenn cited as well as holding that the conflict is a factor. It is a factor. In going back, you asked about the Fassenden case. I looked at our reply brief and recognized or remembered that Fassenden was made. So the analysis doesn't or the facts really don't do not apply to this case. I'm running short of time. I would like to point out that Reliance Standard was entitled to consider inconsistencies in the record. And the record reflects these were all in the materials that were provided to Judge Beshara that between 2013 and 2016, Ms. McIntyre had four medical visits for four pretty serious injuries, three of which were related to dog injuries. Those are in the record. I can provide a supplement if you'd like. But during that time, she saw Dr. Singh the same amount of times, which would reflect that certainly she had functionality beyond what she was claiming to be restricted from. Thank you, counsel. We appreciate your appearance today and your cooperation with our staff to help us do this by video. Case will be closed. Thank you. Thank you, Your Honor.